# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jul 07 2014, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|                              |     |                        |
|------------------------------|-----|------------------------|
| FREDDIE PATTERSON,           | )   |                        |
|                              | )   |                        |
|    Appellant-Defendant, | )   |                        |
|                              | )   |                        |
|      vs. | )   | No.  49A02-1311-CR-944 |
|                              | )   |                        |
| STATE OF INDIANA,            | )   |                        |
|                              | )   |                        |
|    Appellee-Plaintiff. | )   |                        |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Hooper, Commissioner
Cause No. 49F08-1303-CM-19936

**July 7, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Freddie Patterson ("Patterson") appeals his conviction, after a jury trial, for Class A misdemeanor resisting law enforcement.[1]

We affirm.

ISSUES

1.  Whether sufficient evidence supports Patterson's conviction.

2.  Whether the trial court erred in instructing the jury.

FACTS

On March 25, 2013, Officer Travis Williams ("Officer Williams") and Officer Noreen Cooper ("Officer Cooper") with the Indianapolis Metropolitan Police Department were dispatched on a report of battery on a person. When the officers arrived, they spoke with Patterson and his cousin, Bob Garner ("Garner"). Officer Williams did not notice any injuries on the men. However, he did observe that Patterson and Garner had red and watery eyes, slurred speech, unsteady balance, and an odor of an alcoholic beverage coming from both of them.

Garner told the officers that Patterson's wife, Martha Patterson ("Martha") had struck him with a cane. Patterson "basically agreed with everything that [Garner] was saying . . . and said that that's what happened." (Tr. 46). Patterson also told the officers that Martha struck him as well. The officers then went to the Patterson's house to speak with Martha.

---

[1] IND. CODE § 35-44.1-3-1(a)(1).

2

When the officers arrived at the Patterson house, Martha let the officers enter and spoke with them in the living room. Patterson returned to the house about five minutes later and told the officers that Martha had not hit anyone. When Patterson began to leave the house, Officer Williams asked Patterson if he would mind staying while they finished the investigation. Patterson became hostile and charged at Officer Williams until Patterson's face was about six inches from Officer Williams's face. Patterson took "a fighting stance" with clenched fists and "bladed" his body. (Tr. 75-76). Officer Williams testified that he felt threatened because of Patterson's actions and the fact that Patterson was three to four inches taller and forty-five to sixty pounds heavier than he was. Officer Williams ordered Patterson to get back and used an "open-handed palm strike" on Patterson's chest to push him back. (Tr. 76). Patterson approached Officer Williams again, and both officers attempted to place him in handcuffs. Patterson did not allow the officers to handcuff him, and a struggle ensued.

During the struggle, Officer Williams tried to grab Patterson's left arm while Officer Cooper attempted to grab the right arm. Patterson thrashed his arms about and "tensed up to the point where [the officers] could not physically grab [Patterson's] arm to bring it back behind his body." (Tr. 77). The officers eventually put Patterson down on his knees with a portion of his upper body on a couch. Patterson attempted to stand back up, but the officers used their bodyweight to keep him down. Officer Williams told Patterson to stop resisting. Officer Williams considered using his TASER but decided against it because he did not want to leave Officer Cooper alone in the struggle with Patterson. Officer Williams decided to use an "open-handed palm strike" to the side of

3

Patterson's face. (Tr. 80). Patterson stopped struggling and placed his hands behind his back. Patterson was bleeding slightly from his face, and the officers called paramedics for treatment.

On March 26, 2013, the State charged Patterson with resisting law enforcement as a Class A misdemeanor. A jury trial was held on October 21, 2013. After the presentation of evidence, Patterson and the State submitted final jury instructions for the trial court's consideration. The jury found Patterson guilty as charged. The trial court sentenced Patterson to one year of probation. Additional facts will be provided as necessary.

### DECISION

Patterson argues that insufficient evidence supports his resisting law enforcement conviction and that the trial court erred in instructing the jury. Specifically, he contends that we should overturn his conviction because the officers used excessive force in placing him under arrest. Patterson also argues that the trial court erred in instructing the jury in two ways. First, Patterson claims that the trial court erred by giving an edited version of his tendered jury instruction instead of what he originally submitted. Second, Patterson claims that the trial court committed fundamental error by amending another tendered instruction to include language about the amount of force required to convict him of resisting law enforcement. We address Patterson's claims separately.

### 1. Sufficiency of Evidence

The standard of review for a sufficiency of the evidence claim is that this Court should only reverse a conviction when reasonable persons would not be able to form

4

inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.*

To convict Patterson of resisting law enforcement as charged, the State had to show that he: 1) knowingly or intentionally; 2) forcibly resisted, obstructed, or interfered with Officer Williams and/or Officer Cooper; 3) while the officers were lawfully engaged in the execution of their duties. IND. CODE § 35-44.1-2-1(a)(1). Patterson claims that Officer Williams used excessive force and was no longer lawfully engaged in the execution of his duties. The State claims that the officers "reasonably responded to [Patterson's] unprovoked aggression and persistent forcible resistance and only escalated their use of force as necessary to gain physical control of [Patterson]." (State's Br. 12).

The general rule in Indiana is that "a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000) (quoting *Casselman v. State*, 472 N.E.2d 1310, 1315 (Ind. Ct. App. 1985)), *trans. denied*. However, when an officer uses unconstitutionally excessive force in effecting an arrest, that officer is no longer lawfully engaged in the execution of his or her duty. *Shoultz*, 735 N.E.2d at 823.

Claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen are analyzed under the Fourth Amendment to the United States

Constitution and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because the Fourth Amendment test of reasonableness is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. However, the "reasonableness" inquiry in an excessive force case is an objective one; the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id*. at 396–97.

Here, Officer Williams testified that he felt threatened when Patterson—a man three inches taller and at least forty pounds heavier than the officer—got in his face and yelled at him. The officers did not use force on Patterson until he approached Officer Williams a second time after being pushed back. The officers wrestled with Patterson, and Officer Williams considered using his TASER. Instead, after several minutes of struggling with Patterson, Officer Williams delivered one open-handed strike to the side of Patterson's face, and Patterson stopped resisting. Given the facts and circumstances Officer Williams confronted, we find that his actions were objectively reasonable and the force he used was not excessive. *Cf. Shoultz*, 735 N.E.2d at 824-825 (officer's force was excessive where defendant posed no immediate threat and officer struck defendant on the

6

head and leg with a thick metal flashlight). Accordingly, sufficient evidence supports Patterson's resisting law enforcement conviction.

## 2. Jury Instructions

Patterson claims that the trial court abused its discretion in redacting his proposed final instruction and committed fundamental error in adding, at the request of the State, a sentence to another instruction he tendered.

Instructing a jury is left to the sound discretion of the trial court, and we review its decision only for an abuse of discretion. *Stringer v. State*, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). On review, we evaluate a trial court's refusal of a tendered jury instruction in three steps: (1) we determine whether the tendered instruction correctly states the law; (2) we next determine whether the evidence supports giving the instruction; and (3) we determine whether the substance of the instruction was covered by other instructions. *Hartman v. State*, 669 N.E.2d 959, 960-61 (Ind. 1996). "We consider jury instructions as a whole and in reference to each other and do not reverse the trial court . . . unless the instructions as a whole mislead the jury as to the law in the case." *Lyles v. State*, 834 N.E.2d 1035, 1048 (Ind. Ct. App. 2005) (internal quotes and citations omitted), *trans. denied*.

Patterson tendered the following final instruction:

The law does not allow a police officer to use more force than necessary to affect an arrest, and if he does use such unnecessary force, he thereby becomes a trespasser, and an arrestee therefore may resist the arrester's use of excessive force by the use of reasonable force to protect himself against great bodily harm or death. If you find that Officers Williams and Cooper used more force than necessary to effectuate the arrest, then the accused was permitted to resist the arrest to such an extent as necessary to protect

7

himself from great bodily harm or death, and you must find him not guilty of resisting law enforcement.

(App. 97). The trial court deleted the last sentence and read the rest of Patterson's instruction to the jury. Patterson claims that deleting the last sentence was an abuse of discretion because "[n]one of the other instructions addressed the privilege to resist when an officer used excessive force." (Patterson's Br. 9). We disagree.

In addition to Patterson's redacted instruction, the trial court also read the following instruction to the jury:

> It is an issue whether the defendant acted against a public servant in lawful self-defense. A person may use reasonable force against a public servant to protect the person from what the person reasonably believes to be the imminent use of unlawful force. The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense.

(App. 78). Further the trial court instructed the jury that if the evidence tended to convict and acquit Patterson, they were to adopt the interpretation that acquitted Patterson. As previously stated, jury instructions are to be considered as a whole and in reference to each other. Patterson's redacted instruction, along with the other instructions mentioned, adequately addressed his right to resist any unlawful force on the part of the officers. The trial court did not err in redacting Patterson's instruction.

Patterson also tendered the following instruction:

> The Defendant is charged with a crime where one forcibly "resists, obstructs, or interferes[.]" Here, the legislature placed the modifier "forcibly" before the verb "resists," and "resists" was the first in a string of verbs. "Forcibly" modifies the entire string of verbs in that particular section of the statute, due to the placement of the adverb before the string of verbs in that particular clause. Therefore, it is a crime to forcibly resist, forcibly obstruct, or forcibly interfere.

8

One "forcibly resists" law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties.

(App. 80). At the request of the State, the trial court added the following sentence: "The force involved need not to rise to the level of mayhem and need only be a modest level of resistance." *Id*. Patterson did not object to the State's request to add the last sentence. Typically, where a defendant fails to object to a jury instruction, review for error on appeal is not available. *Warren v.* State, 701 N.E.2d 902, 905 (Ind. Ct. App. 1998), *trans. denied*. Patterson relies on our Indiana Supreme Court's decision in *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003) to argue that the addition to his tendered instruction was fundamental error because it was potentially confusing and employed an appellate standard of review. Fundamental error is an error so blatant as to render the trial unfair to the defendant and, thereby, depriving the defendant of fundamental due process. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994).

In *Ludy*, the defendant challenged the following jury instruction:

A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt.

*Ludy*, 784 N.E.2d. at 460. Our Supreme Court found that this instruction was improper because it was potentially confusing, employed an appellate standard of review, and unnecessarily emphasized a particular fact, witness, or phase of the case. *Id*. at 461. Patterson's reliance on *Ludy* is misplaced.

Here, we find that the last sentence added to Patterson's tendered instruction helps fully define the term "forcibly resists" rather than presenting an appellate standard of review. Patterson correctly points out that this Court has stated that "the force necessary to sustain a conviction [for resisting law enforcement] need not rise to the level of mayhem." *Stansberry v. State*, 954 N.E.2d 507, 510 (Ind. Ct. App. 2011). However, this language first appeared in the Supreme Court's opinion in *Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009). *Graham* is part of a line of Supreme Court and Court of Appeals cases developing the definition of "forcibly resists." Included in that line of cases is *Spangler v. State*, 607 N.E.2d 720 (Ind. 1993), which provides the language for the rest of Patterson's tendered instruction. *See also Wellman v. State*, 703 N.E.2d 1061 (Ind. Ct. App. 1998). Further, the added language was not potentially confusing. Instead, the last sentence is necessary for a full, correct statement of the law as it pertains to resisting law enforcement.

In *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct. App. 2005), we affirmed a resisting law enforcement conviction where the defendant turned his shoulders, used his shoulders to push officers away, and made the officers physically place him into a police vehicle. In holding so, we stated the following:

> We recognize that our decision . . . may have moderated the definition of "forcibly resist" as it was written in *Spangler*. . . . Clearly our jurisprudence has not read "violent" to mean that which is thought of in common parlance. Were that to be applied, only those individuals who commit such acts as striking, kicking, or biting police officers could be guilty of resisting law enforcement.

10

*Id.* at 519. "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1165 (Ind. 2003). The added language from *Graham* serves this purpose. Therefore, adding the last sentence to Patterson's tendered instruction was not error, let alone fundamental error. *See, e.g.*, *Gravens v. State*, 836 N.E.2d 490, 496 (Ind. Ct. App. 2005) (added language to pattern instruction was necessary to fully inform jury of the meaning of the word "voluntarily"), *trans. denied*.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.