# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 26 2016, 9:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lavonte A. Wilderness, | April 26, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A03-1510-CR-1725 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable Frances C. Gull, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 02D06-1503-F3-23 |

**Altice, Judge.**

## Case Summary

[1] Lavonte A. Wilderness appeals his convictions and sentence for Rape as a Level 1 felony, Criminal Confinement as a Level 5 felony, and Strangulation as a Level 6 felony. He raises the following issues for our review:

I. Did the trial court abuse its discretion in instructing the jury?

II. Is Wilderness's sentence inappropriate?

[2] We affirm.

## Facts & Procedural History

[3] On the evening of August 11, 2014, L.S. was making the return trip to her home in Decatur, Indiana after visiting her family in Chicago for the weekend. She took a bus from Chicago to Fort Wayne, where she had left her car parked near the bus station. While making the three-block walk to her car after getting off the bus, L.S. crossed paths with Wilderness. As soon as she walked past him, Wilderness turned around and pointed a gun at L.S.'s back and told her to keep walking. When they reached L.S.'s car, Wilderness took her keys and cell phone. He unlocked the car, threw her luggage in the trunk, and got in the passenger side. While pointing the gun at her, he told L.S. to get into the car and drive. L.S. told him that she did not have enough gas in the car, so they stopped at a gas station. Wilderness threatened to shoot L.S. in the gas station if she did not behave normally.

[4] After L.S. put gas in the car, Wilderness directed her to drive to a dead-end street. Wilderness then yanked the gearshift into park and began choking L.S.

He then got out of the car and walked around to the driver's side, where he resumed choking L.S. When L.S. tried to fight back, Wilderness punched her in the eye. Wilderness then dragged L.S. out of the car and raped her vaginally and anally. Afterward, Wilderness got up and walked away. L.S. vomited on the ground, then got into her car and drove home.

[5] While en route to Decatur, L.S. called Theresa Bodle, who went to L.S.'s house and found her lying on the floor, crying and shaking in a fetal position. Bodle called the police and took L.S. to a medical center where she underwent a sexual assault examination. DNA samples collected during the exam were consistent with the DNA profile of Wilderness.

[6] The State ultimately charged Wilderness with Level 1 felony rape, Level 5 felony criminal confinement, and Level 6 felony strangulation. Following a two-day jury trial, Wilderness was found guilty as charged. On September 16, 2015, the trial court sentenced Wilderness to consecutive terms of forty years for rape, six years for criminal confinement, and two and a half years for strangulation, for an aggregate sentence of forty-eight and a half years. Wilderness now appeals.

## Discussion & Decision

### I. Jury Instruction

[7] Wilderness's rape charge was elevated to a Level 1 felony based on the State's allegation that he committed the offense while armed with a deadly weapon

and/or threatening the use of deadly force.  *See* Ind. Code § 35-42-4-1.

Wilderness argues that the trial court erred by instructing the jury as follows:

> It is not required that the deadly weapon be held on the victim at all times.  The initial showing of deadly force and the victim's awareness of the defendant's continued constructive possession of the weapon may be sufficient to satisfy the "armed with a deadly weapon" element.

*Appellant's Appendix* at 63.  This instruction was adapted from language used by our Supreme Court in *Potter v. State*, 684 N.E.2d 1127, 1137 (Ind. 1997) (providing that "[w]hen Rape is elevated to a Class A felony due to the use of a deadly weapon, it is not necessary for the State to show that the weapon was held on the victim at all times").

[8]   As this court has explained,

> [t]he purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.  In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions.  The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion.  To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury.  We will consider jury instructions as a whole and in reference to each other, not in isolation.

*Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010) (quoting *Murray v. State*, 798 N.E.2d 895, 899-900 (Ind. Ct. App. 2003)).

[9] Wilderness makes no argument that the instruction misstated the law, nor could he. *See Potter*, 684 N.E.2d at 1137. Instead, he argues that the instruction inappropriately invited the jury to rely on an appellate standard for determining the sufficiency of the evidence. In support, Wilderness cites *Ludy v. State*, 784 N.E.2d 459, 460 (Ind. 2003), in which our Supreme Court disapproved of an instruction providing that a conviction may be based solely on the uncorroborated testimony of an alleged victim, partly because "it presents a concept used in appellate review that is irrelevant to a jury's function as fact-finder." *Id.* at 461. The Court reasoned that appellate courts reviewing the sufficiency of the evidence have observed that a conviction may rest upon the uncorroborated testimony of the victim, but that a jury is not charged with reviewing whether a conviction is supported. Instead, the jury's task is to determine whether the State proved the charged crime beyond a reasonable doubt, and in doing so, the jury must consider all evidence presented. The Court reasoned that "[t]o expressly direct a jury that it may find guilt based on the uncorroborated testimony of a single person is to invite it to violate its obligation to consider all the evidence." *Id.* at 462.

[10] The instruction at issue here is very different from the one at issue in *Ludy*. Nothing about the instruction invited the jury to violate its obligation to consider all the evidence. Instead of presenting an appellate standard of review, the instruction helped to fully define the phrase "armed with a deadly weapon"

in the context of the rape charge. In other words, the instruction was not improper because it was "necessary for a full, correct statement of the law[.]" *See Patterson v. State*, 11 N.E.3d 1036, 1042 (Ind. Ct. App. 2014). *See also Munford*, 923 N.E.2d at 15 (noting that "[t]here is no blanket prohibition against the use of appellate decision language in jury instructions").

[11] Again relying on *Ludy*, Wilderness also argues that the instruction inappropriately highlighted a single piece of evidence—in this case, the gun. *Ludy* is a poor analogue. In that case, the Court found that it was inappropriate to inform the jury that it may find guilt based solely on the victim's uncorroborated testimony because doing so invited the jury to focus on the victim's testimony to the exclusion of other evidence. In this case, however, it was entirely appropriate to make reference to the gun in instructing the jury on the "armed with a deadly weapon" element. Indeed, we are at a loss as to how the jury could have been properly instructed without making mention of such evidence.

[12] Finally, Wilderness argues that the instruction was improper because it presumes that he possessed a gun, a fact the State was required to prove. This argument overlooks the other instructions given to the jury. Both the preliminary and final instructions informed the jury that the State was required to prove the elements of the offenses, including the "using or threatening the use of deadly force or . . . while armed with a deadly weapon" element of the rape charge, beyond a reasonable doubt. *Amended Appellant's Appendix* at 45, 57.

## II. Sentencing

[13] Wilderness also argues that his sentence is inappropriate. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Wilderness bears the burden on appeal of persuading us that his sentence is inappropriate. *See id.*

[14] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather,

the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[15]     In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Wilderness was convicted of a Level 1 felony, a Level 5 felony, and a Level 6 felony. The relevant statutes provide a sentencing range of twenty to forty years for a Level 1 felony, one to six years for a Level 5 felony, and six months to two and a half years for a Level 6 felony. Ind. Code §§ 35-50-2-4, -6, -7. The trial court imposed consecutive terms of forty years for rape, six years for criminal confinement, and two and half years for strangulation. Thus, Wilderness's aggregate sentence of forty-eight and a half years is the maximum sentence permitted by law.

Ordinarily, the maximum possible sentence is most appropriate for the worst offenders. *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002). This is not, however, an invitation to determine whether a worse offender could be imagined. *Wells v. State*, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009), *trans. denied*. "Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario." *Buchanan*, 767 N.E.2d at 973. Accordingly, "[w]e concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Wells*, 904 N.E.2d at 274.

[16] Wilderness's offenses are reprehensible in nature. He abducted a terrified L.S. at gunpoint, threatened her life, and forced her to drive to an isolated location. Once there, he choked her and punched her in the face before dragging her out of the car and raping her vaginally and anally. When he finished, he left L.S. to vomit on the ground as he walked away. As a result of the attack, L.S. had a black eye, petechial hemorrhaging in her eyes, redness to her throat, and a bleeding abrasion on her cervix. Additionally, about a week after the attack, L.S. discovered that Wilderness had infected her with chlamydia. L.S. continues to suffer psychologically as a result of Wilderness's brutal attack. She testified that she has to see a therapist on a long-term basis to manage her anxiety and that she has not slept well since the rape, even with the aid of sleeping pills prescribed by her doctor.

[17] With respect to Wilderness's character, we note that he has an extensive record of criminal conduct. As a juvenile, Wilderness was twice adjudicated delinquent, once for theft and once for burglary, both of which would have been felonies if committed by an adult. As an adult, Wilderness has been convicted of twelve misdemeanors, including two counts of battery and three counts of resisting law enforcement. He also has one felony conviction for possession of marijuana. Wilderness has been provided multiple opportunities for rehabilitation, all of which have apparently failed. His suspended sentences on his misdemeanor convictions have been revoked twice and modified once. His sentence on his felony conviction has been modified twice. Moreover, the brutality of the offenses in this case speaks volumes about Wilderness's

character.  In light of the heinousness of Wilderness's offenses and his unsavory character, we cannot conclude that the maximum sentence was inappropriate.

[18]   Judgment affirmed.

[19]   Robb, J. and Barnes, J., concur.