## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 14 2016, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Kristin A. Mulholland<br>Crown Point, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deandre L. Barnes,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 14, 2016<br><br>Court of Appeals Case No.<br>45A03-1601-CR-1<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Salvador Vasquez, Judge<br><br>The Honorable Natalie Bokota, Magistrate<br><br>Trial Court Cause No.<br>45G01-1412-F3-19 |

**Pyle, Judge.**

# Statement of the Case

Deandre Barnes ("Barnes") appeals the trial court's refusal to give his proposed jury instruction during his trial for Level 3 felony robbery.[1] He argues that the trial court's final jury instruction did not cover the same substance as his proposed jury instruction and improperly referred to him as a "defendant" rather than an "accused." Because we conclude that the trial court's jury instruction covered the substance of Barnes' proposed instruction and was proper, we affirm.

We affirm.

# Issue

> Whether the trial court abused its discretion when it refused to give Barnes' proposed jury instruction.

# Facts

Around 5:30 p.m. on December 8, 2014, Thomas O'Neill ("O'Neill") was walking on the streets near his house in Hammond, Indiana. As he was walking, he observed a gray SUV with three men around it. The three men then approached him and started to circle him. One man told him not to move, and another man pulled a gun out and pointed it at O'Neill's midsection. O'Neill raised his hands, and one of the men—later identified as Barnes—and another man—later identified as Maurice McCoy ("McCoy")—went through

---

[1] IND. CODE § 35-42-5-1(1).

his pockets. Barnes took sixty dollars out of one of the pockets and then said "I got it" and walked away. (Tr. 89). One of the men followed him, and the other got into the SUV and drove away. O'Neill went to a shop on the street and asked a man there to call 9-1-1.

[4] When police officers arrived at the scene, O'Neill described the SUV and the three men who had stopped him. The police searched the area, and Officer Brett Schloer ("Officer Schloer") came across a gray or silver SUV. The driver, McCoy, exited the vehicle and "seemed lost." (Tr. 204). Instead of walking into the house in front of which he had parked, he walked a couple of houses north, started to walk to the house there, then continued northwards again. Officer Schloer found this behavior suspicious and, since McCoy matched the description he had been given of the robbery suspects, began driving toward McCoy. At that point, McCoy began to run, and Officer Schloer parked and started to pursue him on foot. Eventually, another officer found McCoy hiding underneath a vehicle a half a block away from Officer Schloer. Officer Schloer then went back to the silver SUV and found a man named Dominique Randolph ("Randolph") "trying to hide" in the vehicle. (Tr. 211).

[5] Meanwhile, Officer Chris Berdine ("Officer Berdine") was also searching the area. He had heard that one of the suspects was a black male with "dreadlock style hair wearing . . . a dark colored stocking cap." (Tr. 232). As he was driving around the area, he saw someone who matched that description—Barnes—walking along the street. Officer Berdine detained Barnes, and then another officer took Barnes, McCoy, and Randolph to meet up with another

officer, who had O'Neill in his car. The officers conducted a "show-up" identification where they showed the three individuals to O'Neill, and O'Neill identified them as the men who had stopped him and taken his money. (Tr. 180).

[6] Subsequently, on December 10, 2014, the State charged Barnes, McCoy, and Randolph with Level 3 felony armed robbery. On July 6, 2015, Barnes filed a motion to sever his trial from that of his co-defendants, but the trial court denied the motion. The trial court then held a joint jury trial for the three co-defendants on October 26-28, 2015.

[7] At the conclusion of the trial, Barnes submitted a proposed final jury instruction stating:

> The indictment/information names multiple persons who are on trial together. In reaching a verdict, however, you must bear in mind that guilt is individual. Your verdict as to each Accused must be determined separately with respect to him/her, solely on the evidence, or lack of evidence, presented against him/her without regard to the guilt or innocence of anyone else. In addition, some of the evidence in this case was limited to one Accused. Let me emphasize that any evidence admitted solely against one Accused may be considered only as against that person and may not in any respect enter into your deliberations on any other accused.

(App. 111). The trial court had a jury instruction that addressed the issue of a joint trial, but Barnes argued that his proposed instruction "more clearly set[] out about as far as the evidence against anyone accused, versus another." (Tr. 351). He also stated that he "like[d] the language [in his proposed instruction] of the 'accused' as opposed to the 'defendant'" in the trial court's instruction.

(Tr. 351). The trial court refused to give Barnes' proposed instruction, concluding that:

> Well, the fact of the matter is that whenever we're dealing with a jury, of course we're dealing with lay people; these are not attorneys. And the fact of the matter is, I think it's clearer to them, and we continue to call the defendants the defendants, because that is how they know them as, although we've explained to them that an accused is presumed innocent. The Court will use this instruction because I think it is the most consistent with the way the trial has proceeded. So[,] we will not be giving the proposed, but rather the standard [instruction], as to the joint trial.

(Tr. 352). Instead, the trial court instructed the jury as follows:

> Although the defendants are being tried jointly, you must give separate consideration to each defendant. In doing so, you must analyze what the evidence in the case shows with respect to each defendant. Each defendant is entitled to have his case decided on the evidence and the law applicable to him.

(App. 56). Thereafter, the jury found Barnes and his co-defendants guilty as charged, and the trial court sentenced Barnes to twelve (12) years in the Indiana Department of Correction. Barnes now appeals.

# Decision

[8] On appeal, Barnes argues that the trial court abused its discretion when it refused his proposed jury instruction. He contends that the trial court's instruction did not fully cover the substance of his proposed instruction. Specifically, he asserts that the trial court's instruction did not instruct the jury that evidence offered against one accused could not be used in deliberations regarding another accused. He also argues that the trial court's instruction

improperly referred to the defendants as "defendants" rather than "the accused." (Barnes' Br. 10).

[9] Instructing a jury is left to the sound discretion of the trial court and is reviewed only for an abuse of discretion. *Patterson v. State*, 11 N.E.3d 1036, 1040 (Ind. Ct. App. 2014). On review, we evaluate a trial court's refusal of a proposed jury instruction in three steps: (1) we determine whether the proposed instruction correctly states the law; (2) we determine whether the evidence supports giving the instruction; and (3) we determine whether the substance of the instruction was covered by other instructions. *Id.* "'We consider jury instructions as a whole and in reference to each other and do not reverse the trial court . . . unless the instructions as a whole mislead the jury as to the law in the case.'" *Id.* (quoting *Lyles v. State*, 834 N.E.2d 1035, 1048 (Ind. Ct. App. 2005) (internal quotes and citations omitted), *trans. denied*).

[10] The State does not dispute that Barnes' proposed jury instruction correctly states the law and was supported by the evidence. Accordingly, we need determine only whether the substance of Barnes' proposed instruction was covered by other instructions. Barnes argues that the trial court's instruction did not cover the substance of his proposed instruction because it did not instruct the jury that evidence offered against one accused could not be used in deliberations against another accused. Notably, he has not identified any evidence that was offered against only one accused. Regardless, the trial court's jury instruction stated that "[e]ach defendant is entitled to have his case decided on the evidence and the law applicable to him" and that the jury "must give

separate considerations to each defendant." (App. 56). This instruction is equivalent to instructing the jury that evidence offered against one accused cannot be offered against another. It appropriately instructed the jury that evidence "applicable" to each defendant—in other words, "offered against each separate defendant"—should be considered only with respect to that defendant. (App. 56). Thus, the substance of Barnes' proposed instruction was covered by the trial court's instruction.

[11] Next, Barnes argues that the final jury instruction improperly referred to the defendants as "defendants" rather than "the accused." He contends that the term "defendant" was prejudicial because it implied that Barnes had to "actively defend against or attempt to disprove the charges asserted" and was not presumed innocent. (Barnes' Br. 10). He also notes that the United States Constitution grants rights to an "accused" in a criminal proceeding but does not mention the term "defendant."

[12] As stated above, the trial court refused Barnes' proposed instruction with the term "accused" because the term "defendant" had been used throughout the rest of the trial, and that was how the jury knew the defendants. We do not find this decision to be an abuse of discretion because, as the trial court stated, the jury knew the defendants as "defendants." Further, the difference between the two terms is merely a matter of semantics, and the State of Indiana has a long history of referring to defendants as "defendants" in jury instructions. *See*, *e.g.*, *Wilson v. State*, 525 N.E.2d 619, 624 (Ind. Ct. App. 1988) (affirming the trial court's jury instruction using the term "defendant"), *reh'g denied.* The Indiana

pattern jury instructions are given "preferential treatment during litigation," meaning that "the preferred practice is to use the pattern instructions," and many pattern instructions also include the term "defendant." *Harrison v. State*, 32 N.E.3d 240, 252 n.5 (Ind. Ct. App. 2015) (affirming the trial court's use of a jury instruction based on an Indiana pattern jury instruction utilizing the term "defendant"), *trans. denied*. *See also* Indiana Pattern Jury Instructions—Criminal (2d ed. 1991), No. 2.11 at 43 (Stating that "[t]o convict the *defendant*, the State must have proved each of the following elements . . .") (emphasis added).

[13]     Barnes challenges the use of the term "defendant" based on his interpretation that it could imply that he is not presumed innocent. However, we note that the trial court also instructed the jury that:

> . . . [T]he burden rests upon the State of Indiana to prove to each of you beyond a reasonable doubt every essential element of the crime charged. The charge which has been filed is the formal method of bringing the defendants to trial. The fact that a charge has been filed, the defendants arrested and brought to trial is not to be considered by you as any evidence of guilt.

(App. 63). Also, the trial court instructed the jury that "[i]t is a fundamental concept in our law that the defendant comes into court presumed to be innocent of the charges, and this presumption remains throughout the trial of the case, until and unless it is overcome by competent proof of guilt beyond a reasonable doubt." (App. 64). In light of these jury instructions, we conclude that the jury was properly instructed that Barnes was presumed innocent and that the trial court did not abuse its discretion by giving a jury instruction referring to Barnes

as a "defendant." Accordingly, we conclude that the trial court did not abuse its discretion in instructing the jury.

[14] Affirmed.

Bradford, J., and Altice, J., concur.