## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 05 2017, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Brendan K. Lahey
Charles W. Lahey
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Respondent,*

v.

James O. Young,

*Appellee-Petitioner.*

June 5, 2017

Court of Appeals Case No.
20A04-1604-PC-855

Appeal from the Elkhart Superior Court

The Honorable Gretchen S. Lund, Judge

Trial Court Cause No.
20D04-1210-PC-97

**Mathias, Judge.**

[1] In 2003, James O. Young ("Young") was convicted of resisting law enforcement based on an incident that occurred in 2001. Young did not appeal

this conviction. However, after he was later convicted on another charge and sentenced to fifteen years of incarceration, Young filed a petition for post-conviction relief in 2012 seeking to attack his prior 2003 conviction. The Elkhart Superior Court granted Young's petition, and the State of Indiana appeals. Concluding that the post-conviction court erred as a matter of law in granting Young's petition, we reverse.

## Facts and Procedural History

[2] On the evening of December 27, 2001, the Elkhart County Sheriff's Department received a call regarding a custody dispute between Young and his ex-wife. Young, who was at his parents' house, had called the police because his ex-wife had threatened to move to Illinois with their son. Three deputies were dispatched to the scene: Deputy Ryan Hubbell ("Deputy Hubbell"), reserve Deputy Mark Ledbetter ("Deputy Ledbetter"), and Deputy Kelly Todd ("Deputy Todd"). Deputy Hubbell recognized Young's name from a prior encounter. The deputies were also informed by dispatch that there were two "civil warrants" for a James Young. The description of James Young given by the dispatch was that of a white male, 5' 11" tall, weighing 190 pounds, with blond hair and blue eyes. This description generally matched that of Young and was consistent with the James Young Deputy Hubbell knew.[1]

---

[1] Young testified that he kept his hair shaved or very closely shorn, and his father described his son's hair as light brown as opposed to blond.

[3]     By the time the deputies arrived, Young and his wife had settled their immediate dispute, and Young did not desire to speak with the police because he had become emotionally upset. He therefore told his father to tell the police that he was not in the house. However, when pressed by the police, Young's father admitted that his son was inside. Young came to the front door of the house and stepped outside. Deputy Hubbell informed Young that there was a warrant for his arrest and started to grab Young's hand or arm to place handcuffs on him.

[4]     What happened next was a matter of great dispute at Young's trial, but the facts most favorable to the jury's verdict show that, as Deputy Hubbell attempted to handcuff Young, he jerked his arm away. Young's fist narrowly missed Deputy Hubbell's face, and his elbow struck Deputy Todd in the nose. Deputy Hubbell attempted to restrain Young, and both men went to the ground. Young kept his hands underneath his body and, despite the deputies' orders, refused to move them so that he could be restrained. After Deputy Hubbell applied a pressure-point hold on Young's chin, the deputies were able to restrain Young.[2]

[5]     Young was then placed in Deputy Ledbetter's vehicle. At this point, Young could see the deputy's police computer console listing the information regarding the bench warrant. Young pointed out to the deputy that the information for the

_____

[2] According to Young and his father, both of whom testified on Young's behalf, Young had recently had warts surgically removed from his hand and involuntarily flinched when Deputy Hubbell grabbed his hand. Young and his father testified that he did not strike any of the deputies and only struggled in an attempt to breathe as he was placed in a choke hold.

James Young listed on the warrants did not match him. In fact, the James Young listed on the warrants was a black male, was shorter than Young, was twenty years older than Young, and had a different middle name. When the deputies discovered their mistake, they decided to release Young.[3]

[6] On December 31, 2001, the State charged Young with resisting law enforcement as a Class A misdemeanor. A jury trial was held on January 7, 2003. At trial, Young's trial counsel thoroughly cross-examined each of the deputies, and each deputy admitted that the bench warrant was not for Young, but for another James Young. Young's trial counsel emphasized that, had the deputies simply checked to see if they had the right individual, none of the subsequent events would have occurred. Still, the jury found Young guilty as charged, and the trial court sentenced Young to one year, conditionally suspended on "good behavior," plus fines and costs. Supp. Appendix p. 4.

[7] On October 29, 2012 — almost eleven years after the incident leading to the charges and almost ten years after his conviction — Young filed a petition for post-conviction relief. The State filed a response in December of that year. Young then filed an amended petition for post-conviction relief on January 5, 2015. The State filed a response to this petition on September 14, 2015. The State asserted the affirmative defense of laches in its answer.

---

[3] According to Young, Deputy Hubbell told him, "sometimes in life people make mistakes," and "I will forget about the resisting arrest if you forget about this." Tr. p. 160. Young's father also testified that Deputy Hubbell stated, "Well, if you'll forget about this, we'll forget about the resisting arrest." *Id*. at 133. Obviously, no one forgot about the resisting arrest, as Young was subsequently charged with resisting law enforcement.

[8] The post-conviction court held a hearing on December 2015. At this hearing, the post-conviction court repeatedly informed Young that the purpose of the hearing was to address the State's affirmative defense of laches, and the court limited Young's questioning and evidence to the issue of laches. The State presented the testimony of the three deputies, each of whom testified that although they could generally remember what happened on the night of December 27, 2001, they could not remember specific details about the incident with Young. The post-conviction court also took judicial notice that Young had attached to his post-conviction petition a copy of one of the warrants for the arrest of James E. Young, the person the deputies had confused him with.[4]

[9] On May 2, 2016, the post-conviction court entered an order granting Young's petition and vacating his conviction for resisting law enforcement. The post-conviction court agreed with the State that Young's delay in filing his post-conviction petition was unreasonable but concluded that the State had not adequately demonstrated that it was prejudiced by the delay; therefore, the defense of laches did not apply. However, instead of proceeding to hold an evidentiary hearing on the merits of Young's post-conviction claims, the post-conviction court determined that an evidentiary hearing was unnecessary and proceeded to address Young's post-conviction claims. The court determined that Young's claim regarding what he termed the "sufficiency of the evidence"

---

[4] We have been unable to locate a copy in the materials provided to us of the warrant attached to Young's post-conviction petition. Instead, in the appellant's appendix, immediately after Young's petition, there is a photocopy of a sheet with a photograph and the physical descriptors for James E. Young and the petitioner James O. Young.

was more akin to a claim of newly discovered evidence. This "newly discovered" evidence was a copy of a warrant showing that the subject of the warrant was for James E. Young, who as noted above, was a black male not fitting the description of Young. The post-conviction court concluded:

> In the instant case, the newly-discovered evidence potentially consists of evidence that Petitioner was not the actual subject of the warrants relied upon to effect his arrest and even more so, did not in any material way fit the description of the individual who was the subject of those warrants. Therefore, the evidence is material and relevant, and not cumulative of any other evidence presented at trial. Also, it appears to the Court that the evidence was discovered since Petitioner's trial, or most certainly due diligence should have produced it such that it would have been presented at trial. Further the evidence is more than merely impeaching. Evidence that destroys or obliterates the testimony upon which a conviction was obtained is not merely impeaching evidence, rather it is in the nature of being exculpatory. There is nothing about the evidence that is privileged or incompetent. Finally, the new evidence presented by Petitioner is certainly worthy of credit under the circumstances of this case, it can be produced upon retrial of the case, and may produce a different result. Moreover, the Indiana Post Conviction Rules provide that when there exists evidence of material fact, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice, an adequate ground for post-conviction relief has been stated. The Court hereby concludes that Petitioner has met this burden with respect to his claim of newly discovered evidence.

Appellant's App. pp. 29-30 (citations omitted).[5] The State filed a motion to correct error on March 8, 2016, and the trial court denied this motion on March 22, 2016. The State now appeals.

## Post-Conviction Standard of Review

Post-conviction proceedings are not super-appeals and provide only a narrow remedy for subsequent collateral challenges. *State v. Oney*, 993 N.E.2d 157, 161 (Ind. 2013). "If an issue was known and available, but not raised on direct appeal, it is waived. If it was raised on appeal, but decided adversely, it is res judicata." *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001) (citations omitted). Where, as here, the State appeals a judgment granting a defendant's petition for post-conviction relief, "we review using the standard in Indiana Trial Rule 52(A)." *Oney*, 993 N.E.2d at 161. That is, we will not set aside the findings or judgment unless they are clearly erroneous, and we give due regard to the opportunity of the post-conviction court to judge the credibility of witnesses. *Id.* (citing T.R. 52(A)). Under this "clearly erroneous" standard of review, we review only for the sufficiency of the evidence, i.e., we neither reweigh the evidence nor determine the credibility of witnesses, and we consider only the probative evidence and reasonable inferences supporting the judgment, and we will reverse only on a showing of clear error. "Clear error" is

---

[5] The post-conviction court's order rejected Young's claim of ineffective assistance of trial counsel. However, the court also noted that there had been an issue with the trial transcript because a portion of the prosecutor's closing argument had not been recorded and transcribed. The post-conviction court therefore concluded that this, in addition to the newly discovered evidence, entitled Young to post-conviction relief.

that which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

## Discussion and Decision

[11] The State claims[6] that the post-conviction court clearly erred in determining that the copy of the warrant describing James E. Young, instead of James O. Young, was newly discovered evidence that entitled Young to a new trial. Newly discovered evidence requires a new trial only when the petitioner demonstrates that:

> (1) the evidence has been discovered since trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) it is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at trial.

*Whedon v. State*, 900 N.E.2d 498, 504 (Ind. Ct. App. 2009), *trans. granted, summarily aff'd*, 905 N.E.2d 408 (Ind. 2009). We analyze these nine requirements with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.

---

[6] The State also argues that the post-conviction court clearly erred in determining that the State had not met its burden with regard to the affirmative defense of laches. We need not decide this issue, however, as even if we reject the State's argument regarding laches, reversal is required because, as explained in detail *infra*, we agree with the State that Young is not entitled to a new trial based on allegedly newly discovered evidence. Furthermore, because we reverse the post-conviction court on grounds that his evidence was not "newly discovered," we do not address the State's additional argument that the post-conviction court erred by not conducting a full evidentiary hearing on Young's petition after determining that the State had not established the defense of laches.

*Id.* The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief. *Id.*

[12] Here, the warrants at issue were for James E. Young, not James O. Young. Young attached a copy of one of the warrants to his amended petition for post-conviction relief. This, the post-conviction court determined, constituted newly discovered evidence that required a new trial. We disagree.

[13] First, we are unable to see how the warrant was "discovered" since trial. The transcript of Young's jury trial clearly shows that all parties — Young, his trial counsel, and the prosecutor — all knew that that the warrants at issue had not been for Young but for an individual with a similar name. In fact, it was Young himself who first noticed the discrepancy when he was in the back of Deputy Ledbetter's patrol car. The discrepancy between the physical description of Young and the James Young described in the warrant was repeatedly emphasized at trial by Young's trial counsel. Thus, the existence of the warrant was known before trial and cannot be said to have been discovered since trial.

[14] Furthermore, the copy of the warrant showing that the person described was not the petitioner could have been discovered with the exercise of due diligence. A request for a new trial based on newly discovered evidence is subject to a hostile inference of want of due diligence in the absence of a clear showing to the contrary. *Bunch v. State*, 964 N.E.2d 274, 292 (Ind. Ct. App. 2012) (citing *Denney v. State*, 695 N.E.2d 90, 93 (Ind. 1998)).

[15] Again, here the fact that the warrants were not for the petitioner but for another James Young was known to all the parties prior to trial. Indeed, the post-conviction court itself found that "due diligence should have produced [the warrant] such that it would have been presented at trial." Appellant's App. p. 29. We must therefore conclude that obtaining a copy of the warrant was possible with the exercise of due diligence. *See Stephenson v. State*, 864 N.E.2d 1022, 1052 (Ind. 2007) (noting that the due diligence requirement includes a showing of why the evidence at issue was unavailable if it was known to the defense).

[16] In short, the existence of the warrant was known to all parties prior to trial. Therefore, we cannot say that it was newly discovered evidence.[7] Because the evidence was not newly discovered, Young is not entitled to a retrial, and the post-conviction court's vacation of Young's conviction for resisting law enforcement was clearly erroneous.[8]

---

[7] Even if the first eight requirements for a claim of newly discovered evidence were met here, we would conclude that the post-conviction court clearly erred in concluding that the final requirement (that the evidence will probably produce a different result at trial) was met. This is because the validity of the warrants bears no relevance on the issue of whether Young resisted arrest. As this court recently stated in *Patterson v. State*, 11 N.E.3d 1036, 1039 (Ind. Ct. App. 2014), "a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties *regardless of whether the arrest in question is lawful or unlawful.*" (emphasis supplied). Therefore, in the present case, it is immaterial whether the police actually had probable cause or a warrant to arrest Young.

[8] The post-conviction court also concluded that the gap in the transcript of the State's closing argument at Young's trial, combined with Young's claim of newly discovered evidence, required it to grant Young's request for post-conviction relief. As noted by the State, however, this was not a claim raised in Young's petition for post-conviction relief, and the court could not grant relief on this unraised claim. *See Walker v. State*, 843 N.E.2d 50, 58 n.2 (Ind. Ct. App. 2006) (noting that issues not raised in a petition for post-conviction relief are waived). Moreover, the post-conviction court did not conclude that this gap in the transcript, by itself, was ground for granting relief, only that this gap, in combination with what it considered

# Conclusion

[17] Even if we agreed with the post-conviction court that the State did not meet its burden of establishing the affirmative defense of laches, the post-conviction court clearly erred when it determined that the copy of the warrant attached to Young's post-conviction petition was newly discovered evidence. To the contrary, this evidence was clearly known to the parties prior to trial and thus could have been discovered with the exercise of due diligence. Accordingly, we reverse the judgment of the post-conviction court.

[18] Reversed.

Baker, J., and Pyle, J., concur.

---

to be newly discovered evidence, was additional grounds for relief. Since we have concluded that Young's claim of newly discovered evidence fails, this gap in the transcript, standing alone, provides no basis for relief.