Jerome WELLMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–9802–CR–61.

Court of Appeals of Indiana.

Dec. 2, 1998.

Kristin Donnelly Miller, Wyss McNellis Riebenack & Myers, Carmel, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

FRIEDLANDER, Judge.

Jerome Wellman appeals his conviction of two counts of Resisting Law Enforcement,[1]

1. Ind.Code Ann. § 35–44–3–3 (West 1998).

both class A misdemeanors. In challenging the sufficiency of the evidence supporting each conviction, Wellman calls into question the meaning of the terms "force" and "fleeing," as those terms are used in the statute defining resisting law enforcement.

We affirm.

The facts favorable to the judgment are that on May 20, 1997, Christopher MacNeil of the Allen County Division of Family and Children's Services went to Wellman's house to investigate a report of child abuse. MacNeil was accompanied by Officer Robert Hatfield of the Allen County Police Department. When they arrived, Wellman met them at the door and spoke with MacNeil for several minutes and Wellman was generally uncooperative. Officer Hatfield advised Wellman that he should cooperate. Wellman responded that the reason for the visit was unfounded and that he would "have to respectfully resist." *Record* at 44. After MacNeil advised Wellman that his failure to cooperate would likely require court intervention, Wellman again expressed his intention to "respectfully resist." *Id.* at 45.

At this point, Wellman indicated that he was going back inside his house. Officer Hatfield told Wellman not to do so. Nevertheless, Wellman went back inside his house and shut and locked the door behind him. Officer Hatfield twice demanded that Wellman open the door. When Wellman refused, Officer Hatfield forced open the door and entered the house. Wellman had by that time climbed the stairs to the second floor. Officer Hatfield informed Wellman that he was under arrest and instructed him to come downstairs. Wellman came down the stairs, but stopped at the front door, saying, "No, I'm not going. You have to physically take me out of this house. I'm not leaving." *Record* at 76–77. Wellman extended his arms to the sides of the doorway as if to hold himself in the doorway, but Officer Hatfield pushed him outside.

Once outside, Officer Hatfield placed handcuffs on one of Wellman's wrists. Wellman did not cooperate, forcing Officer Hatfield to move Wellman's arms in order to put on the handcuffs. Thereafter, Wellman dropped to his knees and stated, "No, you're going to

have to drag me to get me out to the car." *Id.* at 79. Officer Hatfield handcuffed the other wrist, told Wellman he was not going to drag him, and threatened to use pepper spray. Wellman reiterated that Hatfield would have to drag him to the car. Wellman's son came out of the house at that point and helped Officer Hatfield lift Wellman to his feet. Once on his feet, Wellman walked to the police car and sat down in the back seat.

Wellman was charged with two counts of resisting arrest. One of the counts was based upon Wellman's act of fleeing into the house after being ordered not to do so. The other count was based upon his acts of physical resistance, including: (1) resisting the command to leave the house after he was placed under arrest by attempting to hold himself in the doorway; (2) not cooperating during handcuffing; and (3) refusing to get up off of the ground and go to Officer Hatfield's police car. Wellman was convicted as set out above following a jury trial.

Wellman contends that the evidence was insufficient to support his convictions. The standard of review for claims of insufficient evidence is well settled.

> An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without reweighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

*Shields v. State,* 699 N.E.2d 636, 638 (Ind. 1998).

Wellman was convicted of one count of resisting law enforcement for entering his house despite Officer Hatfield's command to remain outside. IC § 35–44–3–3(a)(3) provides that a person commits resisting law enforcement if he "[flees] from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop." Wellman challenges the sufficiency of the evidence on this count only with respect to the element of "fleeing." Citing several previous cases, Wellman contends that the act of walking

into his house did not constitute "fleeing" within the meaning of the statute. Specifically, Wellman argues:

All the cases dealing with fleeing a law enforcement officer dealt with running or jumping or high speed chases. The case at bar does not resemble any of those factual scenarios. No reasonable person could infer that by closing his door, Mr. Wellman was running, moving away swiftly, intentionally secreting himself away to avoid arrest, or concealing himself within his home. Nor can any reasonable person infer that by closing his door, Mr. Wellman was acting comparatively to a person who engages an officer in a high speed car or foot chase. Because the State failed to prove the essential element of flight as required by the statute, Mr. Wellman's conviction should be reversed.

Appellant's Brief at 18. Wellman's argument in this regard implies that the question of whether a "flight" occurred requires an inquiry into the speed, mode, and manner of retreat from a law enforcement officer after the officer has given the command to stop. IC § 35–44–3–3 imposes no such requirements.

In *State v. Blake,* 468 N.E.2d 548 (Ind.Ct. App.1984), police chased the defendant in a car until the defendant drove into a mobile home park. The pursuing police officer parked behind the defendant's car and exited his squad car at the same time the defendant got out of his car. The officer ordered the defendant to stop, but the defendant "disregarded [the officer] and entered a nearby trailer which was his home." *Id.* at 549. There is no indication in *Blake* that the defendant ran or even hurried into the trailer. Yet, this court observed, "[the defendant's] flight into the mobile home following [the officer]'s order to stop in and of itself constitutes resisting law enforcement." *Id.* at 551.

■ We conclude that "flight" in this context should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there. We note in this regard that *Black's Law Dictionary* (6th Ed.1990),

defines the phrase "flee from justice" as follows:

Removing one's self from or secreting one's self within jurisdiction wherein offense was committed to avoid arrest; or concealing one's self therein, with intent, in either case, to avoid arrest, detention, or punishment for some criminal offense.

*Id.* at 639. The above definition clearly emphasizes the concept of absenting one's self from law enforcement. On the other hand, the definition does not even mention the manner of movement, *e.g.,* whether the movement was swift. Similarly, *Black's Law Dictionary* defines "flight from prosecution" exclusively in terms of removing one's self from law enforcement, without regard to the manner in which such is accomplished:

The evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention, or the institution or continuance of criminal proceedings, regardless of whether one leaves jurisdiction. Also comprehends continued concealment. Such is considered to exist when an accused departs from the vicinity of the crime under circumstances such as to indicate a sense of fear, or of guilt or to avoid arrest, even before the defendant has been suspected of the crime.

*Id.* at 639–40.

■ In the instant case, Officer Hatfield had arrived in a marked police car, dressed in full uniform. Wellman stipulated that the officer was conducting a legitimate and lawful investigation. There was evidence that Officer Hatfield ordered Wellman to remain outside after Wellman refused to cooperate with the child abuse investigation, that Wellman went inside the house anyway, and that he locked the door behind him. It is irrelevant that Wellman did not run quickly into the house, or attempt to hide once there. Consistent with the aforementioned discussion, for purposes of a conviction of resisting law enforcement, it was enough that Wellman disobeyed a command to remain by walking away from Officer Hatfield into his own house and thereafter locking the door behind him. *See id.* The evidence was sufficient to support the conviction based upon a charge of fleeing.

Wellman contends that the evidence was not sufficient to support his conviction for resisting arrest by offering physical resistance. The following excerpt from Wellman's appellate brief summarizes his argument that the State did not prove the requisite element of "force:"

> The cases finding evidence of forcible resistance all comport with the definition of "forcibly" in [*Spangler v. State*, 607 N.E.2d 720, 724 (Ind.1993) ]. The cases all contained acts of strength, power or violence *directed toward* the officer(s) involved. In all cases, there was evidence of threatening gestures and movements toward or away from the officers. Conversely, the State in this case presented no evidence of any such violence or threats toward Hatfield. The only evidence presented indicated a civil, non-violent [sic] stand, by Mr. Wellman, in protest of his arrest. A review of the record reveals no evidence from which a reasonable person could find, with the requisite level of certainty, that Mr. Wellman acted forcibly as defined by *Spangler.* Because the State failed to prove the essential element of "force" as required by statute, Mr. Wellman's conviction should be reversed.

Appellant's Brief at 12 (emphasis in original) (footnote omitted). Wellman's definition of "force" in this context is overly restrictive.

 In this context, force is used when an individual "directs strength, power or violence towards police officers," or when he "makes a threatening gesture or movement in their direction." *Price v. State*, 622 N.E.2d 954, 963 n. 14 (Ind.1993). In *McCaffrey v. State*, 605 N.E.2d 241 (Ind.Ct.App. 1992), this court affirmed a conviction for resisting arrest where the defendant claimed upon appeal that he did not act with force, but instead merely offered passive resistance. In *McCaffrey,* the defendant refused to stand up when commanded to do so by arresting officers. The officers were forced to carry him to their car, and then to lift him out of the car when they arrived at the jail. In affirming the conviction, this court stated:

> The evidence most favorable to the judgment reveals McCaffrey refused to get up and walk after repeated requests to do so

and even after being told he was under arrest. Upon arriving at the jail, McCaffrey continued to refuse to leave the squad car or to put his feet under him to stand. Instead, he pulled his legs up so the officers were forced to use extraordinary effort to remove him from the car to effectuate his lawful arrest. The above constitutes substantial evidence McCaffrey resisted the law enforcement officers as they lawfully sought to perform their duty.

*Id.* at 243.

 In the instant case, Wellman physically resisted leaving the house by placing his hands against the door frame. Officer Hatfield was forced to shove him through the doorway in order to get him outside. Once outside, Wellman refused to get up and walk, forcing Officer Hatfield to lift Wellman onto his feet. This evidence was sufficient to prove that Wellman acted with the requisite force in resisting Officer Hatfield in the performance of his duties and therefore was sufficient to sustain the conviction. *See McCaffrey v. State*, 605 N.E.2d 241.

Judgment affirmed.

NAJAM and MATTINGLY, JJ., concur.