## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Ellen F. Hurley
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vino Mason,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 31, 2016

Court of Appeals Case No.
49A04-1511-CR-1881

Appeal from the
Marion Superior Court

The Honorable
Shatrese M. Flowers, Judge
The Honorable
Peggy Ryan Hart, Commissioner

Trial Court Cause No.
49G20-1205-FD-35992

**Kirsch, Judge.**

[1] Vino Mason ("Mason") was convicted after a jury trial of resisting law enforcement[1] as a Class D felony and was sentenced to 240 days executed. He appeals his conviction, raising the following restated issues for our review:

> I. Whether sufficient evidence was presented to support his conviction for resisting law enforcement; and

> II. Whether the trial court abused its discretion when it failed to give his proposed final jury instruction to the jury.

[2] We affirm.

## Facts and Procedural History

[3] On May 28, 2012, at approximately 11:47 p.m., Indianapolis Metropolitan Police Department Officer Kevin Larussa ("Officer Larussa") was patrolling and driving westbound on West 26th Street in Indianapolis, Indiana when he observed a driver, later identified as Mason, park his car in an area known to have high incidents of drug activity. Officer Larussa turned his patrol car around and watched Mason exit his car and walk between two vacant houses. Officer Larussa parked his patrol car around the corner and waited to see if Mason returned to his car. Mason came back to his car about a minute later and drove away. Officer Larussa saw Mason roll through an intersection

---

[1] *See* Ind. Code § 35-44-3-3(a), (b)(1)(A). We note that, effective July 1, 2012, this statute was repealed and recodified at Indiana Code section 35-44.1-3-1. Because Mason committed his crime prior to July 1, 2012, we will apply the statute in effect at the time he committed his crime.

without stopping at the stop sign. Officer Larussa then began to follow Mason in order to initiate a traffic stop.

[4] When Officer Larussa caught up to Mason, Mason sped up a little bit and drove through another stop sign. Mason then turned into an alley. Officer Larussa activated his emergency lights and followed Mason into the alley. Mason travelled down the alley at speeds around thirty to thirty-five miles per hour. When Mason reached the end of the alley, he turned into another alley, heading west. As he made the turn, Mason's car fish-tailed around the corner and almost hit a light pole. At that time, Officer Larussa turned on his siren, and Mason sped up even more, continuing down the alley. Mason's car began to again fish-tail, and he almost hit a second light pole. Mason pulled onto Harding Street and stopped his car on the west side of the street. Officer Larussa arrested Mason for resisting law enforcement.

[5] On May 29, 2012, the State charged Mason with Class D felony resisting law enforcement. During the subsequent jury trial, Mason offered the following proposed final jury instruction:

> To "flee" law enforcement means to make a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there.

*Appellant's App*. at 103. The trial court declined to give Mason's proposed instruction, finding that it was not a pattern jury instruction and that the jury was capable of determining both the law and the facts and could give the

"reasonable prudent definition to the word" flee. *Tr*. at 103. During closing argument, Mason's counsel recited the definition of flee contained in the proposed jury instruction. When the jury deliberated, it asked to see the "legal definition of flight that the defense counsel read." *Id*. at 129. The State objected, arguing that the definition was not a legal definition of flight, and the trial court declined the jury's request to hear the language again and advised the jury to re-read the instructions they had been given. After the jury could not reach a decision, the trial court brought the jury back into the courtroom and allowed the attorneys additional argument over the definition given by Mason's counsel. They jury thereafter found Mason guilty as charged. Mason now appeals.

## Discussion and Decision

## I. Sufficient Evidence

[6] The deferential standard of review for sufficiency claims is well settled. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We will not disturb the jury's verdict if there is substantial evidence of probative value to support it. *Fuentes*, 10 N.E.3d at 75.

We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012). As the reviewing court, we respect "the jury's exclusive province to weigh conflicting evidence." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

[7] Mason argues that the evidence presented at trial was not sufficient to support his conviction for resisting law enforcement. He contends that he was not trying to elude Officer Larussa at the time he drove through the alley, but that he was, based on concerns for his safety, merely driving until he could reach a well-lit street in order to pull over. Mason, therefore, asserts that he had adequate justification for not stopping until he reached Harding Street, and he did not resist law enforcement.

[8] In order to convict Mason of resisting law enforcement as a Class D felony, the State was required to prove beyond a reasonable doubt that Mason knowingly or intentionally fled from a law enforcement officer after the officer had, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself and ordered Mason to stop and that Mason used a vehicle to commit the offense. Ind. Code § 35-44-3-3(a), (b)(1)(A).

[9] Here, looking at the evidence most favorable to the jury's verdict as we are required to do under our standard of review, the evidence showed that, after Officer Larussa pulled his patrol car behind Mason's car, Mason sped up and drove through an intersection without stopping at the stop sign. Officer Larussa

then attempted to initiate a traffic stop by activating his emergency lights, and Mason turned into an alley. Evidence was presented that there was a street light on the corner before the entrance to the alley, but Mason did not stop there. *Tr.* at 49. Mason drove through the alley at speeds of approximately thirty to thirty-five miles per hour, fish-tailing, almost hitting light poles, and not stopping. After Mason turned down another alley, Officer Larussa activated his siren, and Mason still did not stop; instead, he sped up. Although Mason testified that he had turned on his hazard lights, Officer Larussa testified that Mason's hazard lights were not on, and Mason made no indication of stopping while Officer Larussa pursued him. *Id.* at 76, 111. Based on our standard of review, we conclude that sufficient evidence was presented by the State to support Mason's conviction for resisting law enforcement. Mason's argument that he did not commit the offense is merely a request for this court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Boggs*, 928 N.E.2d at 864.

## II. Jury Instruction

[10] Mason argues that the trial court abused its discretion when it refused his tendered jury instruction on the definition of flight, particularly as it applies to resisting law enforcement. He contends that the proposed instruction was a correct statement of the law because the language of the proposed instruction came from an Indiana Court of Appeals case. Mason also claims that the evidence presented at trial supported giving the instruction because his defense was based on the notion that he did not flee the police but only drove a short

distance to stop in a well-lit area. Mason lastly asserts that the substance of his tendered instruction was not covered by the other instructions given to the jury.

[11] "'The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010) (quoting *Murray v. State*, 798 N.E.2d 895, 899 (Ind. Ct. App. 2003)). Instructing the jury lies within the sole discretion of the trial court. *Eberle v. State*, 942 N.E.2d 848, 861 (Ind. Ct. App. 2011), *trans. denied*. We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *Williams v. State,* 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Eberle*, 942 N.E.2d at 861. In determining whether a trial court abused its discretion by declining to give a tendered instruction, we consider (1) whether the tendered instruction correctly states the law, (2) whether there was evidence presented at trial to support giving the instruction, and (3) whether the substance of the instruction was covered by other instructions that were given. *Fry v. State*, 25 N.E.3d 237, 249 (Ind. Ct. App. 2015), *trans. denied*.

[12] Here, Mason tendered the following proposed instruction to the trial court, which the trial court refused:

> To "flee" law enforcement means to make a knowing attempt to escape law enforcement when the defendant is aware that a law

enforcement officer has ordered him to stop or remain in place once there.

*Appellant's App*. at 103. This language was taken from *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998), which was a case challenging the sufficiency of the evidence to support convictions for resisting law enforcement. Our Supreme Court recently stated, "we have long held that the 'mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury.'" *Keller v. State*, 47 N.E.3d 1205, 1209 (Ind. 2016) (quoting *Ludy v. State,* 784 N.E.2d 459, 462 (Ind. 2003) (alteration in original). The Court further stated, "Appellate review of the sufficiency of the evidence . . . will 'rarely, if ever,' be an appropriate basis for a jury instruction, because the determination is fundamentally different." *Id*. (quoting *Garfield v. State*, 74 Ind. 60, 64 (1881)).

[13] In line with this rationale, even if the language in the proposed jury instruction was a proper statement of the law in the context of the facts of *Wellman*, this does not mean that it was a proper statement of law in the present context. In *Wellman*, the police went to the defendant's house to investigate reports of child abuse and, while there, ordered the defendant to remain outside; however, the defendant entered his house and locked the door. 703 N.E.2d at 1062. On appeal, the defendant challenged his convictions for resisting law enforcement, contending that the act of walking into his house did not constitute fleeing within the meaning of the statute. *Id*. at 1062-63. This court held that it was sufficient under the statute that the defendant disobeyed a command from the

police and entered his house. *Id.* at 1063. The language from *Wellman* that Mason used in his proposed instruction specifically stated that "'flight' *in this context* should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Id.* (emphasis added). Therefore, the definition from *Wellman* that Mason proposed as a jury instruction was specific to that case and the particular context of the facts there. If the trial court had given Mason's proposed jury instruction, we believe that the jury would have been misled into substituting what they believed was the legal definition of flight for their own common sense definition. "'[W]here terms are in general use and can be understood by a person of ordinary intelligence, they need not be defined.'" *Roche v. State*, 690 N.E.2d 1115, 1128 (Ind. 1997) (quoting *McNary v. State,* 428 N.E.2d 1248, 1252 (Ind. 1981)).

[14]     This possibility for misleading the jury was apparent after Mason's counsel recited the language from the proposed jury instruction in his closing argument. During deliberations, the jury requested that the trial court give them the "legal definition of flight that the defense counsel read." *Tr.* at 129. The foreperson stated that the jury felt that "there may or not be a law that wasn't presented to [them]." *Id.* at 135. Thus, the potential for the jury to be misled Mason's proposed jury instruction was evident, and the trial court properly refused to give the requested jury instruction.

[15]     Additionally, the substance of Mason's proposed jury instruction was already covered by other instructions given by the trial court. As part of the final

instructions, the trial court instructed the jury as to the elements of the crime of resisting law enforcement as follows:

> The crime of Resisting Law Enforcement is defined by statute as follows: A person who knowingly flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop commits Resisting Law Enforcement.
>
> To convict the Defendant of Count I, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, VINO MASON
>
> 2. Knowingly
>
> 3. Fled from Officer Kevin Larussa
>
> 4. After Officer Larussa had, by visible or audible means, identified himself and ordered the Defendant, Vino Mason to stop
>
> 5. And the Defendant, VINO MASON used a vehicle to commit the offense
>
> If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant, VINO MASON, not guilty of Resisting Law Enforcement.

*Appellant's App.* at 84. The jury was also instructed as to the definition of knowingly: "A person engages in conduct "knowingly" if, when he engages in this conduct, he is aware of a high probability that he is doing so. *Id*. at 85.

[16] These instructions given to the jury covered all of the required elements of the charged crime. The jury was told that fleeing occurs after an officer has by visible or audible means identified himself and ordered the defendant to stop. It was also instructed as to the requisite mens rea for the crime. We, therefore, conclude that the jury was sufficiently and fully instructed as to the necessary elements of the crime, and the instructions given did not mislead the jury. The trial court did not abuse its discretion in refusing to give Mason's proposed jury instruction.

[17] Affirmed.

[18] Riley, J., and Pyle, J., concur.