# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 21 2018, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dillon D. Scarbrough, <br> *Appellant-Defendant,* <br><br> *v.* <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 21, 2018 <br><br> Court of Appeals Case No. 27A02-1706-CR-1243 <br><br> Appeal from the Grant Superior Court <br><br> The Hon. Warren Haas, Judge <br><br> Trial Court Cause Nos. 27D03-1606-F6-248 27D03-1607-F6-275 |

**Bradford, Judge.**

# Case Summary

In this consolidated appeal, Appellant-Defendant Dillon D. Scarbrough appeals from convictions and sentences arising out of two incidents. In June of 2016, a police officer noticed Scarbrough approaching in his truck from behind at a high rate of speed. When the officer directed Scarbrough to pull into a nearby parking lot, Scarbrough sped off instead, eventually stopping in a dark alley. When the officer followed, Scarbrough approached on foot, screaming, and forcibly resisted the officer. In cause number 27D03-1606-F6-248 ("Cause No. 248"), Scarbrough was charged with and convicted of Level 6 felony resisting law enforcement and Class A misdemeanor resisting law enforcement.

In July of 2016, Scarbrough appeared outside the Grant County Jail restraining a person he claimed to be arresting. When officers instead decided to arrest Scarbrough on several charges, he told the jail officers who were booking him that he planned to perform citizen's arrests on several officers and any who resisted would be killed. In cause number 27D03-1607-F6-275 ("Cause No. 275"), Scarbrough was charged with and convicted of Level 6 felony intimidation. Following a combined sentencing hearing, the trial court imposed an aggregate sentence of four years of incarceration. Scarbrough appealed in both Cause Nos. 248 and 275, and this court ordered the appeals consolidated. Scarbrough contends that the trial court abused its discretion in admitting certain evidence, the State failed to introduce sufficient evidence to sustain his convictions, and his sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

## I. Cause No. 248

[3]     At approximately 10:00 p.m. on June 25, 2016, Marion Police Sergeant Benjamin Williams noticed a General Motors truck "bearing down on [him] at a high rate of speed from behind." Cause No. 248 Tr. Vol. I p. 125. When Sergeant Williams activated his lights to the rear, the truck, driven by Scarbrough, pulled alongside. Scarbrough rolled his window down and screamed, "Are you one of the f****** cops that stopped me the other day?" Cause No. 248 Tr. Vol. I p. 127. When Sergeant Williams directed Scarbrough to pull into a nearby parking lot, Scarbrough immediately drove away from him, "full on the accelerator." Cause No. 248 Tr. Vol. I p. 130. Sergeant Williams began pursuit, activating his vehicle's red and blue lights. After a short chase, Scarbrough pulled his truck "very deep" into a "dark alley[,]" passing by an easily-accessible, well-lit parking lot. Cause No. 248 Tr. Vol. I p. 131.

[4]     After Scarbrough stopped his truck, he "jumped out of the passenger side and ran at [Sergeant Williams's] squad car[,]" screaming incomprehensibly. Cause No. 248 Tr. Vol. I p. 132. Sergeant Williams told Scarbrough to stop; met him near the front fender of his police vehicle; and forced him down, face-forward, on the hood. As Sergeant Williams held Scarbrough down, Scarbrough was "fighting, resisting, throwing elbows, that sort of thing[.]" Cause No. 248 Tr.

Vol. I p. 134. After Marion Police Officer Kyle Griffith arrived, Scarbrough was subdued.

[5] On June 27, 2016, the State charged Scarbrough in Cause No. 248 with Level 6 felony resisting law enforcement with a vehicle and Class A misdemeanor forcibly resisting law enforcement. During Scarbrough's trial, Sergeant Williams testified that the location where Scarbrough stopped his truck caused him "lots of concerns" and that it was not a usual traffic stop. Cause No. 248 Tr. Vol. I p. 143. When asked to express what his concerns were, Sergeant Williams explained as follows, without objection:

> [T]his in police training would be referred to as a fatal funnel. This is a situation where there is nowhere to escape to as far as put in a police situation where you know safety of the police office[r]. This is a[sic] your stuck between two (2) buildings, and keep in mind, this is taken during the daytime. This was dark. Very dark after 10:00 o'clock at night. There was nowhere to go it was literally being trapped between two (2) buildings.

Cause No. 248 Tr. Vol. I p. 143.

[6] Officer Griffith was asked whether he saw any issues with the way the vehicles were stopped in the alley. Scarbrough objected to the question on relevancy grounds, to which the State responded that it was relevant to Scarbrough's intent. Officer Griffith stated:

> [T]his is not an ideal situation for the officer. Essentially he's placed in a larger version of what we call the fatal funnel. Which is generally referred to when you're talkin[] about a doorway, or you're entering a house, or another room. We call it the fatal funnel because if somebody's gonna shoot you it's generally

gonna be through that doorway. So whenever you're approaching you wanna try to be out of the main straight on view of the door. You wanna try to do it at an angle cut we'll call it slicing the pie kind of checking you know the next room or whatever you're looking at. Slowly so that you can make sure the threat isn't there, but you would never wanna walk up to a door head face or straight on because you're essentially getting in that funnel. Well this is essentially a larger version of it with the officer being you know in this funnel between these two (2) buildings.

[7]     Cause No. 248 Tr. Vol. I pp. 187–88. The jury found Scarbrough guilty as charged.

# II. Cause No. 275

[8]     At approximately 2:00 p.m. on July 1, 2016, Grant County Sherriff's Jail Officer Roberta Stitnicky was on duty at the Grant County Jail when she heard tires screeching outside followed by pounding on an entrance generally used by officers to bring prisoners in. Jail Officer Stitnicky saw three men outside, one of whom yelled for her to come out. Instead of immediately going outside, Jail Officer Stitnicky radioed for assistance. Scarbrough, who was one of the three men, stated that he was making a citizen's arrest. Scarbrough was restraining one of the other men and yelled at him, "[Y]ou keep stealing from me… I let you work it off and why would you just keep stealing from me?" Cause No. 275 Tr. Vol. I p. 130. Scarbrough told the man to "shut the f*** up" or Scarbrough would punch him in the mouth. Cause No. 275 Tr. Vol. I p. 131. Jail Officer Stitnicky did eventually walk outside with another jail officer, and a few minutes later, Grant County Sheriff's Deputies arrived to assist.

Scarbrough, who was wearing brass knuckles, was arrested on suspicion of reckless driving, battery, and criminal confinement.

[9] While Scarbrough was being booked by Jail Officers Stitnicky and Andrew Turner, he said that he was going to start arresting officers and stated that "if they resisted he would have them killed." Cause No. 275 Tr. Vol. I p. 133. Scarbrough was aggressive with his threat, and Jail Officers Stitnicky and Turner both took it seriously. On July 11, 2016, the State charged Scarbrough with, *inter alia*, Level 6 felony intimidation, and on April 19, 2017, a jury found Scarbrough guilty of that charge.

## III. Common Procedural Facts

[10] On May 16, 2017, the trial court conducted a combined sentencing hearing for Cause Nos. 248 and 275. In Cause No. 248, the trial court sentenced Scarbrough to two years of incarceration for Level 6 felony resisting law enforcement with a vehicle and 266 days for Class A misdemeanor forcibly resisting law enforcement, to be served concurrently. In Cause No. 275, the trial court sentenced Scarbrough to two years of incarceration for Level 6 felony intimidation, to be served consecutively to his sentence in Cause No. 248. Scarbrough filed separate notices of appeal in Cause Nos. 248 and 275, and, on November 13, 2017, this court ordered that the appeals be consolidated.

## Discussion and Decision

# I. Admission of Evidence in Cause No. 248

[11] Scarbrough challenges the trial court's admission of testimony from two police officers regarding "fatal funnels." The State contends that the evidence is relevant to prove Scarbrough's intent to flee, while Scarbrough contends that it is unduly prejudicial. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005). We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006). "Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant." *Goudy v. State*, 689 N.E.2d 686, 694 (Ind. 1997).

[12] Scarbrough did object to Officer Griffith's testimony; however, even if we assume that the admission of Officer Griffith's testimony was an abuse of discretion, it could only be considered harmless error in light of the overwhelming evidence of Scarbrough's guilt. *See, e.g.*, *Manetta v. State*, 527 N.E.2d 178, 179 (Ind. 1988) ("We find it unnecessary to address this issue, for assuming *arguendo* the evidence was erroneously admitted, such admission

would be harmless where the evidence supporting the guilty finding was not only substantial but overwhelming."). The evidence regarding Scarbrough's actions is not in dispute, and clearly supports a conviction for resisting law enforcement. Indeed, Scarbrough's testimony corroborates the testimony that he bypassed other parking lots before pulling deeply into the alley, contending only that he believed the alley to be the first convenient stopping place. In other words, Scarbrough admits that did not pull over immediately upon being told to, nor did he pull over where he was directed to. In light of the overwhelming evidence that Scarbrough fled from Sergeant Williams, the admission of Officer Griffith's testimony, even if erroneous, could only be considered harmless.

[13] As for Sergeant Williams's testimony, Scarbrough did not object to it and has therefore waived any argument against it for appellate consideration. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). Scarbrough does not attempt to avoid the effects of his waiver by claiming that the admission amounted to fundamental error, which is "a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008). Even if Scarbrough had made a claim of fundamental error, it would not have helped him. As stated earlier, in light of

the evidence of Scarbrough's guilt of Level 6 felony resisting law enforcement, any error in the admission of Sergeant Williams's testimony (as with Officer Griffith's testimony) could only be considered harmless.

## II. Sufficiency of the Evidence

Scarbrough contends that the State failed to produce sufficient evidence to sustain his convictions for Level 6 felony and Class 1 misdemeanor resisting law enforcement in Cause No. 248 and Level 6 felony intimidation in Cause No. 275.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State,* 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in

original).  "We will not reweigh conflicting evidence or judge the credibility of witnesses."  *Heaton v. State*, 483 N.E.2d 58, 59 (Ind. 1985).

## A.  Level 6 Felony Resisting Law Enforcement in Cause No. 248

[15]  Indiana Code section 35-44.1-3-1 provides, in part, that

> [a] person who knowingly or intentionally … flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop … commits resisting law enforcement, [a] Level 6 felony if … the person uses a vehicle to commit the offense[.]

[16]  Scarbrough contends only that the State failed to prove that he fled from Sergeant Williams, noting that he ultimately pulled over approximately forty to fifty yards from where he was told to pull over and then turned to engage police instead of attempting further flight.  Put another way, Scarbrough seems to maintain that the only reasonable interpretation of the evidence is that he did not drive far enough to establish flight and was simply attempting to comply with Sergeant Williams's order to pull over.

[17]  We do not agree that this is the only reasonable interpretation of the evidence. As we recently noted, "[j]uries are uniquely positioned to decide whether a driver was unnecessarily increasing the burden on police officers, or whether a driver was taking reasonable steps that common sense would dictate."  *Cowans v. State*, 53 N.E.3d 540, 546 (Ind. Ct. App. 2016).  All that is required is that the

record contain evidence from which a jury could conclude that Scarbrough made "'a knowing attempt to escape law enforcement when … aware that a law enforcement officer ha[d] ordered him to stop or remain in place once there[,]'" however short the flight or unsuccessful the attempt ultimately proved to be. *Id.* at 545 (quoting *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998)).

[18] The evidence most favorable to the judgment is that when Sergeant Williams told Scarbrough to pull over into an adjacent parking lot, Scarbrough instead accelerated "full on," drove through an intersection, passed another well-lit parking area, turned left, and finally stopped in a dark alleyway. The jury could reasonably have concluded that these were not the actions of a person attempting to comply with an officer's direction and that Scarbrough's actions constituted flight. Scarbrough's argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See Heaton*, 483 N.E.2d at 59.

## B. Class A Misdemeanor Resisting Law Enforcement in Cause No. 248

[19] Indiana Code section 35-44.1-3-1 provides, in part, that "[a] person who knowingly or intentionally … forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties … commits resisting law enforcement, a Class A misdemeanor[.]" Scarbrough does not argue that he did not forcibly resist Sergeant Williams and Officer Griffith, only that the entire incident was the result a series of misunderstandings and/or he was somehow justified in doing so. Even if we were to assume that any of this

would help Scarbrough, the jury was under no obligation to credit his version of events, and apparently did not. As with the previous argument, this argument is nothing more than an invitation to reweigh the evidence, which we will not do.

## C. Intimidation in Cause No. 275

[20] Indiana Code section 35-45-2-1 provides, in part, that

> [a] person who communicates a threat to another person, with the intent:
>
>> (1) that the other person engage in conduct against the other person's will [or]
>>
>> (2) that the other person be placed in fear of retaliation for a prior lawful act …
>
> commits intimidation, a …
>
>> (1) Level 6 felony if:
>>
>>> (A) the threat is to commit a forcible felony[.]

"To prove intimidation, the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act." *C.L. v. State*, 2 N.E.3d 798, 800 (Ind. Ct. App. 2014).

[21] We conclude that the State produced sufficient evidence to sustain Scarbrough's conviction for intimidation. While Jail Officers Stitnicky and Turner were booking him, Scarbrough said that "he was going to … start arresting officers and if they resisted he would have them killed [and that] they're not going to know where they're coming from." Cause No. 275 Tr. p. 133. At the very

least, a reasonable jury could have concluded that Scarbrough's statement was a threat directed at the jail officers made with the intent to cause them to (1) submit to his future arrest of them against their will, (2) terminate Scarbrough's booking process against their will, and/or (3) fear reprisals for their roles in facilitating his arrest and impending incarceration. Scarbrough makes several challenges to his intimidation convictions, none of which we find to be compelling.

[22] Scarbrough claims that the State failed to prove a prior, legal act, *i.e.*, that his arrest was somehow illegal. The record does not support this claim. Grant County Sheriff's Deputy Matt Ogden indicated that he arrested Scarbrough for reckless driving, battery on the man that Scarbrough was restraining (based on the way that Scarbrough removed him from Scarbrough's vehicle), and criminal confinement of that man. (Cause No. 275 Tr. Vol. I 177). Scarbrough does not dispute that probable cause to arrest him existed for all three of these charges.

[23] Scarbrough's first argument is essentially that because none of these charges resulted in conviction, his arrest for them must have been illegal. This argument is without merit. Dismissal of or acquittal on a criminal charge may occur for any number of reasons unrelated to the existence of probable cause at the time of arrest. If an arrest is legal at the time it is made, nothing that happens later can render is retroactively illegal, even if the prosecutor, a judge, or a jury eventually become convinced of the defendant's innocence. *See, e.g.*, *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) ("A valid arrest based

upon then-existing probable cause is not vitiated if the suspect is later found innocent.").

[24] Scarbrough also argues that his arrest was illegal because he was merely conducting a legal citizen's arrest. At the time, however, all police had to go on was Scarbrough's unverified claim to that effect. The record indicates that Deputy Ogden knew that officers had heard squealing tires, indicating possible reckless driving; had apparently seen Scarbrough pull another person out of his truck with force; and had seen Scarbrough restraining that person with force and heard him threatening to punch him in the face. This information in no way conclusively establishes that Scarbrough was conducting a valid citizen's arrest and therefore provides more than enough probable cause to arrest Scarbrough. We will not craft a rule that would have required authorities to simply take Scarbrough's word for it that he was conducting a valid citizen's arrest.

[25] Scarbrough also contends that his statement did not amount to a "threat" as it was conditional on the officers resisting his attempts to arrest them in the future. The Indiana Supreme Court, however, has made it clear that even a "conditional" threat may support an intimidation conviction by adopting this court's conclusion to that effect. *See Roar v. State*, 54 N.E.3d 1001, 1002 (Ind. 2016) (adopting and incorporating, in relevant part, *Roar v. State*, 52 N.E.3d 940 (Ind. Ct. App. 2016), *trans. granted*). In our opinion in *Roar*, we rejected the notion that a threat could not contain conditional language and still be a threat, noting that "the language a defendant uses in communicating a threat may be

relevant to the fact-finder's assessment of the defendant's intent, but the language used is not the only relevant consideration." *Roar*, 52 N.E.3d at 943. We also wholly agree with the *Roar* court's observation that no defendant should be able to avoid prosecution for intimidation by rephrasing his threat as conditional. *See id.* ("Under the reasoning of [disapproved cases], no defendant can be convicted of intimidation if he has the presence of mind to explicitly use conditional language in the course of communicating his threat to another. But that is an unreasonable interpretation of our intimidation statute."). To the extent that Scarbrough's threat to Jail Officer's Stitnicky and Turner may have been phrased conditionally, this does not help him.

[26] Finally, Scarbrough argues that his statement about planning to arrest "officers" was not directed at the jail officers in his presence, but, rather, to the officers who arrested him, none of whom were in the vicinity at the time. This is a strained interpretation of the record for which there is no evidence. The jury was entitled to conclude that the statement was directed at Jail Officers Stitnicky and Turner, and it did. Scarbrough's argument in this regard is nothing more than an invitation to reweigh the evidence, which we will not do. To summarize, we conclude that all of Scarbrough's challenges to the sufficiency of the evidence supporting his convictions are without merit.

## III. Sentence

[27] Scarbrough contends that his four-year, aggregate sentence is inappropriately harsh. We "may revise a sentence authorized by statute if, after due

consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). The trial court sentenced Scarbrough to an aggregate sentence of four years of incarceration following his convictions for Level 6 felony resisting law enforcement, Level 6 felony intimidation, and Class A misdemeanor resisting law enforcement. The sentencing range for a Level 6 felony is from six to thirty months, with the advisory sentence being one year. *See* Ind. Code § 35-50-2-7.

[28] As for the nature of Scarbrough's offenses, they vary in seriousness. In Cause No. 248, the offenses were not particularly egregious. Scarbrough's vehicular flight from Sergeant Williams was not long, and there is no evidence that any

other motorists were placed in any danger. While any vehicular flight has the potential to be dangerous, this is already reflected by the sentencing range mandated by the General Assembly for this particular form of resisting law enforcement. In Cause No. 275, Scarbrough's intimidation was significantly more egregious, as it involved a threat directed at jail officers that he would have them killed if they resisted his attempts to arrest them. Pursuant to the intimidation statute, a threat involving *any* forcible felony raises the crime to felony status, and Scarbrough's threat involved the most serious forcible felony of them all. Moreover, the threat was made to jail officers, public servants who were simply doing their jobs at the time. Overall, we conclude that the nature of Scarbrough's offenses justifies a moderately enhanced sentence. While the nature of Scarbrough's offenses might not have justified maximum sentences, that is not what the trial court imposed.

[29] As for Scarbrough's character, he has consistently shown a disregard for societal norms and authority and, recently, a willingness to demonstrate that contempt through the use of force. As an adult, Scarbrough (who was twenty-two years old when the crimes in Cause Nos. 248 and 275 were committed) has prior misdemeanor convictions for three counts of marijuana possession, paraphernalia possession, and resisting law enforcement. On August 7, 2016, Scarbrough received a jail write-up after telling a guard that he was going to be arresting several local police officers and would use a gun if necessary, he could fire a gun faster than any local officers, he owned body armor, and his local militia would assist him. On August 27, 2016, Scarbrough received a jail write-

up when authorities found "hooch" in his cell. Cause No. 275 Appellant's App. Vol. II p. 103. Scarbrough was out on bond in Cause No. 248 when he committed his crime in Cause No. 275. Without going into detail, Scarbrough's rejection of authority and refusal to accept responsibility for his actions is reflected in his extensive communications from jail. The communications contain frequent declarations of innocence, and, after Scarbrough became convinced that the trial court had "tossed" a communication from him, a letter to the trial court that ended, "You should have taken the higher road. I have your number!" Sent. Ex. D. Scarbrough's brushes with the law, which are increasing in frequency and severity, do not speak well of his character. Moreover, Scarbrough's seemingly total lack of remorse for his actions does him no credit. Scarbrough's character supports the imposition of enhanced sentences. Scarbrough has failed to establish that, in light of the nature of his offenses and his character, his sentence is inappropriate.

[30] We affirm the judgment of the trial court.

Robb, J., and Crone, J., concur.